Whyte, Judge,
(dissenting.) The matter in controversy between the parties, originates in the will of Sampson David, and depends on the following clause, to *564 “It is my will, that my beloved wife, Martha David, jlave a]j my esj;ate, both real and personal, during her life, (excepting a debt due by John Chandon, of three thousand dollars, or thereabouts,) which said debt due me by said Chandon, I will and bequeath to the grand children of my mother, Mary David, to be paid to them equally as they come of age, to wit, the children of Sims David, James David, Isaac David and Mary Chandon, wife of David Chandon. It is my will, that my wife Martha, at her death, may have full power and authority to dispose of all my personal property, or money, bank stock, &c. my negro slaves excepted, in any manner she may think proper.”
On the part of the plaintiffs it is contended, that Mrs David took an interest in the property for her life only, with a power of appointment at her death, of the remainder of the personalty, (which is only in dispute by the argument,) and that she (Mrs David) having departed this life without having executed the power so given to her, the personal property, by the statute of distributions goes to the next of kin of the testator, Sampson David. On the part of the defendants, it is contended, that Mrs David took the absolute interest in the personalty by the will, and that the power given of disposing of it at her death, accords with such interest being in her, and (hat the intention is evidenced by the amplitude of the expression, “may have full power and authority at her death, to dispose of all my personal property, or money, bank stock, &c., my negro slaves excepted, in any manner she may think proper.”
The object in all contested testamentary dispositions of property, where the subject matter of disposal, the person who is the object of the testator’s bounty, or the quantum of interest to be passed by the instrument, are all, or either of them litigated, is to ascertain the intention of the testator; this is the first and great inquiry, and when it is first ascertained, a second may according to circumstances arise, to wit, whether this intention comports with the rules of law, and is sanctioned by those *565 principles, which in a course of judicial decision have governed cases of the like kind.
There is no question raised upon this will, as to the kind of property, or the specific nature of it: the only question made by the argument is, the quantum of interest in the property which is the subject of the testamentary disposition. On the solution of this question depends necessarily at the same time, who is taker under the will and the object of the testator’s bounty; for if a limited interest only is given to Mrs David the wife, then .the next of kin of the testator, Sampson David, are the takers of the remainder of the interest. If an absolute estate is given to Mrs David by the will, then her next of kin become the objects of the testator’s bounty, and not the next of kin of the testator. If there is no latent ambiguity on the face of the will, the construction must be on the face of the instrument itself. “It is a well settled rule,” says Chancellor Kent; “that seems not to stand in need of much proof or illustration, for it runs through all the books, from Cheyney’s case, (5 Coke, 68,) down to this day, that parol evidence cannot be admitted to supply or contradict, enlarge or vary, the words of a will, nor to explain the intention of the testator, except in two specified cases; 1st, where there is a la’tent ambiguity arising dehors the will, as to the person or subject meant to be described; and 2d, to rebut a resulting trust.” The objections to supply the imperfections of a written will by the testimony of witnesses, is founded on the soundest principle of law and policy. It would be full of great inconvenience, say the justices in Cheyney’s case, “that none should know by the written words of a will what construction to make or advice to give, but that it should bé controlled by collateral averments out of the will.” “If collateral averments be admitted,” says Lord Hale, in Fry vs. Porter, (1 Mod. 310,) “how can there be any certainty; a will may be any thing, every thing, nothing.” And in a later case, (3 P. Williams, 354,) Lord Talbot said, “that if we admit parol proof,, then the witnesses and not the testator, would make the will.”
*566 Neither of the two specified cases excepted out of the rule, exist in the present cause; the construction, by all the authorities, must be upon the face of the instrument itself. That part of the above clause which is principally contested, if not altogether, between the parties to the suit, consists of the first and last members of it. The subject matter of the middle member being excepted out of the provisions of the first and last members, is out of the case, no question being raised upon it by the argument. The first member is, “it is my will, that my beloved wife Martha David, have all my estate both real and personal, during her life, excepting,” &c. It is contended for the defendants, that the words “during her life,” have an application only to the real estate, and were inserted for the purpose of limiting the extent, or repelling the effect which a general devise to a person, even without words of procreation or perpetuity, would be construed to give without such words; that this reference being applicable solely to the real estate, disengages the personal estate from their operation, and passes the absolute interest, as if they, the words “during her life,” had not been inserted, which absolute interest passing for a moment without qualification, passes forever. 1 am at a loss to perceive the propriety of this criticism, and why there should be a separation in the tenure of the two kinds of property, which the obvious sense of the passage, as well as the structure of the clause, the preceding copulate “both,” and the following limitation, “during her life,” have inseparably joined together. “All my estate both real and personal,” is a junction of the two estates, an uniting them together for the same purpose, to wit, to be held by my beloved wife, Martha David, for what length of time? During her life. It would not only be a distortion of the sense, but a grammatical impropriety, to pass over the first antecedent, and gratuitously claim, without a scintilla of reason, the second; or to claim one part of a subject, and reject another part, both parts forming a whole, the subject matter of the limitation It therefore seems to me to be the obvious, apparent and *567 undoubted intention of the testator, by this member of the clause, to give to his wife, Martha David, the like interest in both kinds of property, the same in the personal as in the real; that is, ah interest or estate during her life. And it further seems to me, that no mode of expression could have been used by him more appropriate to the purpose of communicating that intention, in a plainer and clearer manner than has been done.
It is next to be seen, whether the intention manifested by this first member, to give a life interest only to the wife, is impugned in any manner by the other member above noticed, either by diminution or enlargement of that interest, or in any other way affecting it. This member says, “it is my will, that my wife Martha, at her death, may have power and authority to dispose of all my personal property, or money, bank stock, &c., my negro slaves excepted, in any manner she may think proper.” The plain meaning of this member is, his giving his wife the liberty of choosing or selecting the person or persons who shall take the persona] property after her death, that was given to her during her life; or in other words, the power of appointment generally, both as to the object and quantity, whether to one or more persons, and if the latter, in what proportion or quantity to each respectively. This was a liberty or power that necessarily follows the interest previously given, to be exercised and take effect upon the termination of that interest, her life estate, to wit, after her death, It is perfectly consistent with the interest before given, not infringing upon it in the smallest degree, following the ■ former in regular succession, corroborating, were it necessary to do so, the intention of giving, and of having given an estate or interest for life only, by the former or the first member, to his wife. But it is argued by the counsel, that the last member enlarges the interest given by the first, or shows the intention of the testator by the first to be, not a limited interest for life only, or an estate for life, but an unlimited interest, or the absolute property. How can such a construction as this be passed upon the testator for his intention? *568 If the absolute property was given before by the words “during her life,” it virtually included the provision contained in this member, and ex necessitate, carried with it as an incident, the power of disposing of the personal property, not only at her death, as in this member, but during her life also, and that at all times. And therefore, if that was his intention before, an expression of it here was wholly unnecessary, and could not have been expected to be used by him, because its use upon that construction would be inoperative. One other circumstance in the phraseology of the last member of the clause, is to be noticed as strongly indicative of the intention, and that is, the repetition of the time when the power given is to be exercised, to wit, at her death. The diction is, “at her death, to have full power and authority, at her death, to dispose, &c.” This double expression of the time shows the importance attached to it by the testator, and betokens a state of mind solicitous to insure clear notice and strict observance, implying forcibly the negative of any other previous time than the one so pointed out.
This is my view of this clause of Sampson David’s will; and I think it must be the view that would naturally present itself to any person whose mind is disineum-bered from the distinctions and niceties to be found in the books on contested testamentary bequests, upon his reading this will for the purpose of seeing how the testator has disposed of his property; and such, to my mind, undoubtedly was the intention of the testator, Sampson David.
Having now examined what I consider the most important question in the cause, that is, the intention of the testator appearing on the face of the will itself, as it is thereby presented to the common understanding of mankind, I next proceed to examine this intention upon the cases, and apply the rule in them laid down, as indicative of that intention; which rules may be said to be the intention of the testator, as it has appeared so to be to legally informed minds, to chancellors and judges, up *569 on the wills and testaments before them in a course of litigation between the parties concerned therein.
These cases it is well known are very numerous, and many of them have been cited and referred to in the argument. I shall only notice those particularly, which in my opinion have the nearest resemblance, and are the most in point to the present. The case of Reid vs. Shergold, (10 Ves. 370,) shews that an express estate for life, with a power to dispose by will, does not give the absolute interest, so as to preclude the necessity of executing the power; and the Lord Chancellor in his judgment, page 379, says, it is well settled, in the case alluded to by Mr. Romilly, and many others, that where there is an express limitation for life, with a power to dispose by will, the interest is equivalent only to an estate for life, and the power is to be executed prima facie at least by will. If the party dies, the interest ceases with the life, and no one can take by transmission of interest from that person, though they might take by the power, if executed.” This case is directly in point to the present, as appears from the judgment of the Chancellor; and indeed to use the words of Lord Ellenborough in a case before him, “it runs upon all fours with it.” There is no difference in substance or effect, though a nominal variation in one or two of the words giving the power; in the cited case, the power is to dispose by will; in the case before the court, the power is “to dispose at her death,” an equivalent expression, signifying the same thing: The disposition is to be at her death, taking effect after her death, excluding any disposition to others during her life, and conferring nothingininterest onherwhich she had not before,and that by express terms was an interest for life only, this last being a power. From the very striking similarity between these two cases, I shall make another citation from the judgment of Lord Eldon immediately following the one already made; and I do this as it meets the argument of the counsel on both sides in the present case. Lord Eldon proceeding, says, “In this c9.se the meaning of the testator was this: he was providing anxiously in every part *570 of his will, that his neice should have the power of receiving the rents and profits from time to time, for her separate use, tying up her hands from indulging her inclination against herself. He studiously confines the power of giving the premises, to a power of giving by will, in its nature revocable in every period of life; the power was given in that way to protect her against her own act. This is the more strong, as the bequest of the £20 a year, and the dividends of the £400 stock, are expressly given to the neice for life, and after her death nothing was to take effect in her, or any one but by her authority. She had nothing therefore in point of interest, but for her life. In point of authority, she might by her will have made a disposition to take effect at her death.” All the reasons in the judgment of the chancellor in this casein reference to the will, are peculiarly applicable to Mrs. David. As the Chancellor says, the property was given in the way it was, to protect her against her own act, and from indulging her inclination against herself; therefore, the testator deprived her of the ability of doing so, by virtue of her interest in the estate given her, by limitingit for life; and nothing more than that was to take effect in her, or any one else, as springing from quaintity of interest, but as springing from a power which alone was to be executed at her death. This case in 10 Ves. is a late case, in 1805, of high authority, and shows the law on the point as held in England, in reference to all the preceding decisions to that time. On this ground a particular notice of prior cases on the point, is deemed quite unnecessary. Two later cases from the same reporter have been cited by the defendant’s counsel as having analogy to this case, for the purpose of impugning the doctrine of it, to wit, the case of Bradford vs. Street, (16 Ves. 139,) decided in 1809; and Turin vs. Farner, (19 Ves. 85,) in 1812; but when looked info will be found not to interfere with it. In the first, by the will and codicil, the power is given to dispose of the estate in her lifetime, by any deed or deeds in writing, or by her last will and testament, and therefore is *571 far from coming up to the present case. In the last case, there was a legacy for life, with a general power of appointment by will, or otherwise, of course by deed in her lifetime, which amounts to an absolute power of disposition at any time. These cases are wholly inconsistent with a life interest. They strengthen instead of detracting from the authority of Reid vs. Shergold, and are direct authorities in favor of the plaintiff.
I will now advert to some of the cases relied on by the arguments for the defendants. The principal case is Shermer vs. Shermer’s Executors, (1 Wash. Rep. 266. John Shermer by his will, devised to his wife the use and ■ profits of his whole estate, both real and personal, during her natural life, and after that was ended, then the whole of his estate, exclusive of that already given to his wife, to be equally divided between whomsoever his wife should think proper to make her heir or heirs, and his brother Rich’d. Shermer. He further directed, that his executors, as soon as the crops were finished after his wife’s death, should sell and dispose of his whole estate, real and personal, as they'might think most proper for the receiver’s benefit. The wife died in 1775, a few days after the testator, without making any appointment of her part of the estate. The executors sold the estate agreeably to the will, and distributed one moiety thereof amongst the relations of Mrs. Shermer, for the recovery of which this suit was brought against the executors and distributees, by John Shermer, son, heir and executor of Richard Shermer. It was argued for the appellee, that in last wills it is not necessary that the testator should use technical words in order to pass a fee; for however inartificially he may express himself, yet if his intention can be discovered to mean a disposition of his whole interest in the thing devised, the court will supply such words as maybe necessary to effectuate the intention. It will be seen, when looking into the report of this case, to be an authority not very happily applied to support or prove any particular principle, rule or point, as springing from, laid down, or established by any case, or class of cases. It pays no *572 great respect to eases in general on this subject, and the decision professes not no be founded on any of them, but on the apparent intention upon view of the will. The President in delivering the opinion of the court, says, “several cases have been cited, but they seem to verify the saying of a judge,‘that in disputes upon wills, cases seldom elucidate the subject, which depending on the intention of the testator to be collected from the will, and the relative situation of the parties, ought to be decided upon the state and circumstances of each case.’ To which I will add, that I have generally observed, that adjudged cases have more frequently been produced to disappoint, than to illustrate the intention; and I am free to own, that when a testator’s intention is apparent to me, cases must be strong, uniform, and apply pointedly, before they will prevail to frustrate that intention.” And accordingly the decision of the cause was directed by the intention of the testator. The opinion proceeding, after noticing a point in the case, says, “that point need not be decided, since upon a view of the will, the intention is apparent that the wife’should have the whole estate for life, and that at her death one half (except his special bounty to her) should go to her family, and the other to his own.” This case it is seen is unlike the present in its statement or facts, and therefore not a special authority to support the position for which it was adduced. But it is a highly respeqtable authority upon its own point, which is, that when upon a view of the will, the intention of the testator is apparent, cases must be strong, uniform and apply pointedly, before they will prevail to frustrate that intention.
Another case cited as showing that where a life estate is given to the wife, and a power of disposing at her death, gives the absolute property to the wife, is Pushman vs. Filliter, (3 Ves. 7;) but on examining that case it will be found to establish no such principle: the bequest is, “lastly, all my household goods and furniture, plate, linen and china, ready money and securities for money, stock *573 In trade, together with the residue and remainder of my personal estate, of every nature and kind soever, and wheresoever, I give, devise and bequeath unto my said wife Mary Pushman, desiring her to provide for mydaugh-ter Anne out of the same, as long as she my said wife shall live, and at her decease to dispose of what shall be left among my children in such manner as she shall judge most proper.” No life estate or interest is given here to the wife; the absolute gift is to her of part of the property, clothed only with a trust for his daughter Anne; the life term is not attached to the interest of his wife Mary Pushman, but to the trust of the daughter Anne, who only could file a bill to impound the property. The rest of the children could not file a bill, which proves the absolute estate passed to their mother as far as regarded them, and not a life estate, which it must have done to make it an authority for the defendants, and bearing on the case before the court. This is a single case, of Push-man vs. Filliter: it occupies the middle ground between an estate given generally without specification of interest, with power to dispose of it at her death as she may choose, and where an estate is given expressly for life, having that particular specification of interest, with a power to dispose of at her death, as she may choose. In the former, the law on the cases has made the bequest an absolute interest in the first taker, or legatee, to dispose of in any manner, or at any time such taker may choose, being complete owner to all intents and purposes whatever.
In the latter, the law upon the cases is, that the first taker, or life interest, has only the use during life, with a power of appointment at death; which if executed, passes the property to the appointee 5 if not executed, it vests under the statute of distributions. This case of Pushman vs. Filliter, as far as regards the trust to the testator’s daughter, comes within the principle of the latter class of cases, and as far as regards the rest of the testator’s children,comes within the principle of the former; and though in terms it is not precisely in point to the present case, yet is directly illustrative of the principle of each *574 of the above classes of cases alluded to, and an authority for the plaintiffs.
Having now made my observations upon the cases the most relied upon on either side, particularly, it would be too tedious, and also unnecessary to go through all the other cases in the same manner, that have been cited on the argument, and therefore I will content myself with observing, that in general they are such as from the generality of the expressions creating the estate or interest given to the first taker, are necessarily construed to be a fee in the case of real property, and the absolute interest in the case of personalty, as in 1 Salk. 236; 2 P. Will. 543; 5 Bur. 2638; 1 Leon. 256; 2 Atk. 102; 2 Wils. 6; 2 Johns. Rep. 381; and that whenever it is the clear intention of the testator that the devisee should have an absolute property in the estate devised, a limitation must be void, because it is inconsistent with the absolute property supposed to be in the first devisee, as in Attorney General vs. Hall, (Fitz. 314;) Ross vs. Ross, (1 Jac. and Walk.) and Smith T. vs. Bell and wife, (Martin and Yerger’s Rep. 302.
A review of the doctrine on this much extended subject, is taken by Chancellor Kent in the recent case of Jackson vs. Robins, 1819, in the court of Errors of the State of New York, in affirmance of the decree of the supreme court of that State in the same cause, in which after a most able and laborious examination of the cases, as well English as American, (and it must he admitted that no man was perhaps better qualified for such a task,) he comes to the following conclusion: “We lay it down as an incontrovertible rule, that where an estate is given to a person generally, or indefinitely, with a power of disposition, it carries a fee; and the only exception to the rule is, where the testator gives to the first taker an estate for life only, by certain and express words, and annexes to it a power of disposal. In that particular and special case, the devisee for life, will not take an estate in fee, notwithstanding the distinct and naked gift of a power of disposition of the reversion.” And he says this distinc *575 tion is carefully marked and settled in the cases. Tomlinson vs. Dighton, (1 P. Wms. 149;) Cropling vs. Cropling, (2 Cox 396;) Reid vs. Shergold, (10 Ves. 370;) Goodtitle vs. Otway, (2 Wilson 6.
From these cases, and a very great number of others, for the books are full of them, the great governing principle upon contested devises and bequests, is, that the intention of the testator is to govern, unless inconsistent with the established rules of law. And the particular principles established by the particular cases, are the construction of the expression made use of by the testator, or the intention of the testator as it appeared to be to the learned expounders or declarers of that intention. The result of the whole of them is, that whereas in the present case before the court, an express estate is given for life, with a power to dispose of the subject by will, or at death, which is the same thing, there the interest for life is not increased by the power, the operation of the power being that of appointing who shall take after the death, not that any further or greater interest be given to the taker of the life estate.
I am of opinion, therefore, that the decree of the chancellor be reversed, and a judgment and decree be rendered for the plaintiffs, and the cause remanded to the court of chancery, &c.
Judgment affirmed.